CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

SEP 09 2008

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:08CR00005-6 |
| | ) | |
| v. | ) | |
| | ) | <u>REPORT AND RECOMMENDATION</u> |
| JAIRO GOMEZ, | ) | |
| a/k/a Jairo Juarez, | ) | |
| | ) | By:   B. WAUGH CRIGLER |
| Defendant. | ) | U.S. MAGISTRATE JUDGE |

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3) and upon the defendant's

consent, this case was referred to the undersigned to conduct a plea hearing.

**DEFENDANT'S RESPONSES TO RULE 11 INQUIRY**

The Grand Jury returned a multiple-count Indictment charging defendant in Count One with

conspiracy, in violation of Title 18, United States Code, Section 371; in Count Two with Aggravated

Identity Fraud, in violation of Title 18, United States Code, Section 1028A; and in Count Three with

conspiracy to traffic identity documents, in violation of Title 18, United States Code, Section 1028.

On September 2, 2008, a plea hearing was conducted before the undersigned, and pursuant

to the terms of the plea agreement, the defendant entered a plea of guilty to Counts One and Two of

the Indictment.  At this hearing the defendant was placed under oath and testified his full legal name

is Jairo Gomez[1], he was born on June 9, 1975 in Mexico, and he received formal education up to the

fifth grade in Mexico.  The defendant stated that can read and "more or less" speak English, but his

ability to write the language is limited.[2]  The defendant stated that he was fully aware of the nature

---

[1]The Indictment and the plea agreement also identified the defendant's alias as "Jairo
Juarez."  At the Rule 11 hearing, the defendant denied that he has been known by this alias.

[2]An interpreter assisted the defendant during the hearing.  Also, the defendant's counsel
informed the court that an interpreter was used on several occasions when he and the defendant
discussed the provisions of the plea agreement.

of the charges against him and the consequences of pleading guilty to those charges. The defendant further testified that he was not under the influence of alcohol, medicine, or any drug. The defendant stated that he had no other physical or mental condition which impaired his ability to understand the nature of the proceedings being held. The defendant's counsel stated that he had no reservations as to the defendant's competency to enter a plea of guilty to the offenses.

The defendant testified that he had received a copy of the Indictment pending against him and that he had fully discussed the charges therein, and his case in general, with his counsel. The defendant stated that he was pleading guilty of his own free will because he was, in fact, guilty of the offenses charged. The defendant also stated that no one had made any promises, assurances, or threats in an effort to induce his plea. The defendant testified that he understood that Counts One and Two are felonies, and if his plea is accepted, he will be adjudged guilty of those offenses, and the government will move for the dismissal of Count Three of the Indictment.

The defendant was informed that the maximum statutory penalty for Count One is a $250,000 fine, five years imprisonment, a special assessment of $100, and a period of supervised release. The defendant was informed that the maximum possible penalty for Count Two is a $250,000 fine, a mandatory minimum sentence of two years imprisonment, a special assessment of $100, and a period of supervised release. The defendant was further informed that parole has been abolished and that if he is sentenced to prison, he will not be released on parole but on supervised release, a violation of which could result in additional incarceration. Finally, the defendant testified that he understood that he will be required to pay a mandatory assessment of $100 per felony count of conviction, or $200.

The defendant was informed that under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow in determining the sentence in a criminal case. The defendant was then informed that the Sentencing Guidelines are no longer

mandatory, but the sentencing judge may apply them in an advisory fashion in determining a reasonable sentence.   The defendant testified that he and his counsel had discussed how the Sentencing Guidelines might apply in his case.  The defendant also testified that he understood that the court would not be able to determine the applicable guideline range, for advisory purposes, until after a presentence report has been prepared and both parties have been given an opportunity to challenge the reported facts and application of the Guidelines.   The defendant stated that he understood that the eventual sentence imposed may be different from any estimate his attorney had given him, and that the court has the authority to impose a sentence that is either higher or lower than that called for by the Guidelines, so long as the sentence is not greater than the statutory maximum for the offenses to which the defendant is pleading guilty.

The defendant acknowledged he agreed that USSG §§ 2L2.1 and 2X1.1, with a base offense of 11, are applicable to his criminal conduct, and that if the court does not accept this recommendation, it does not provide him with grounds to withdraw his guilty plea. The defendant stated that he understood that, contingent upon his acceptance of responsibility and continued cooperation in the sentencing process, and fulfillment of his duties under the plea agreement, the government will recommend a two-level (2) reduction under USSG § 3E1.1(a), and because he meets the listed criteria, he should be granted an additional one-level (1) reduction under USSG § 3E1.1(b), if applicable.  The defendant stated that he was aware that if he fulfilled his obligations under the plea agreement and accepted responsibility for his conduct, the government would recommend a sentence at the low end of the applicable guidelines range.   The defendant acknowledged awareness that this was merely a recommendation, and that the court had the discretion to sentence him up to the maximum penalty under the law.  The defendant was informed that the government would object if he moved for a downward departure.  The defendant also stated that he understood that the government is under no obligation to file a motion for substantial

3

assistance, but that to the extent the government does exercise such discretion in this regard, he must provide such assistance in a manner set forth in the plea agreement. The defendant stated that he understood that a determination as to whether he had provided "substantial assistance" was a matter within the discretion of the United States Attorney's Office.

The defendant acknowledged he knew that despite the court's recommendations for the location of service for any term of imprisonment, it is up to the Bureau of Prisons to determine where he will serve any sentence imposed. The defendant was informed that any information he gives during a proffer or cooperation will not be used against his to enhance his sentence pursuant to USSG § 1B1.8, but that the information could be used to show he was accepting responsibility. The defendant acknowledged that any fines, assessments and restitution would be payable in full immediately upon entry of a judgment of conviction, and he agreed to make good faith efforts toward payment of any restitution obligation imposed. The defendant admitted he knew he would be required to submit a financial statement revealing all his assets and liabilities within thirty days after the date of his plea agreement. After completion of this financial statement, defendant agreed he would not convey anything of value without authorization from the government.

The defendant acknowledged that he was waiving his right to have a jury determine beyond a reasonable doubt the facts alleged in the Indictment, including any facts related to sentencing. The defendant testified that he understood that he had the right to a trial by a jury, in addition to the following rights, which will be waived or given up if his guilty plea is accepted:

1. The right to plead not guilty to any offense charged against him;
2. The right at trial to be presumed innocent and to force the government to prove his guilt beyond a reasonable doubt;
3. The right of assistance of counsel at trial and in any subsequent appeal;
4. The right to see, hear and cross-examine witnesses;
5. The right to call witnesses to testify on his own behalf and to the issuance of subpoenas or compulsory process to compel the attendance of witnesses;
6. The right to decline to testify unless he voluntarily elects to do so in his own defense;

4

7.    The right to a unanimous guilty verdict; and

8.    The right to appeal a guilty verdict.

The defendant testified that he understood that under the terms of the agreement he was waiving rights to appeal or collaterally attack his conviction or sentence.[3] The defendant stated he was aware that the government had retained its right to appeal any sentence imposed below the applicable Sentencing Guidelines range or below the government's recommended sentence. The defendant stated that he was waiving his right to raise the defense of the statute of limitations if for any reason the plea agreement is withdrawn or otherwise not consummated.

The defendant also testified that he understood that if he is adjudged guilty of these charges, he may be deprived of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess a firearm.[4] The defendant stated that he was fully satisfied with the advice and representation given to him in this case by his counsel, and that he believed the representation had been effective. The defendant asked the court to accept his plea of guilty to Counts One and Two.

## THE GOVERNMENT'S EVIDENCE

The defendant waived his right to have the government's Factual Summary read in open court, and he had no objection to the Summary.[5] The Factual Summary having been filed in open court, the evidence presented therein regarding the offenses charged, is as follows:

---

[3]The defendant did not waive his right to appeal or file collateral proceedings on the grounds of ineffective assistance of counsel or prosecutorial misconduct not known to him at the time of his guilty plea. (Plea Agreement, p. 7 ¶ 11.)

[4]The defendant stated that he was not a citizen, and the court informed him that if he were a citizen, he would be subject to the deprivation of these rights. When asked about his citizenship, the defendant informed the court that he had a "citizenship appointment" scheduled for August 29, 2008, but that this date had passed and the appointment did not occur.

[5]The defendant's counsel informed the court that prior to the Rule 11 hearing, the interpreter read the Factual Summary to the defendant.

At all times relevant to the pending Indictment, JARIO GOMEZ was a legal resident alien. Beginning in 1999, Defendant EDWIN MENDEZ began purchasing Puerto Rican birth certificates and social security cards from Defendant LUIS M. ROSADO-RODRIGUEZ a/k/a LUIS ENRIQUE TORO which he either provided to or sold to individuals who were illegally residing in the United States. Defendant MENDEZ sold the Puerto Rican source documents to individuals who were illegally in the United States and needed the source documents to secure a state issued identity document, such as an Ohio Identity Card.

Illegal immigration has spurned the growth of a cottage industry which sells false and fictitious identity documents. The United States Congress addressed some of the inherent problems caused by this cottage industry and the resultant identity fraud with the passage identity fraud with the passage of the Real ID Act. The Real ID Act was intended to implement a nationwide effort to prevent terrorism, reduce fraud, and improve the reliability and accuracy of identification documents that State governments issue. The Act, which Congress passed based upon recommendations of the 9/11 Commission, specified minimum requirements for the issuance of state identity documents. Each state issuing agency is required to verify the legitimacy of all source documents used to obtain state identity documents. Source documents include Birth Certificates and Social Security Cards containing the name of the applicant. The Act also specifies methods for verifying identity, lawful status, date of birth and Social Security number. As such, a person in possession of a legitimate Ohio Identity Card appears to be someone that lawfully in the United States and had not assumed someone else's identity.

The Defendants circumvented state and Federal laws, including the Real ID Act, by using the source identity documents from Puerto Rico to obtain identity cards issued under the authority of the State of Ohio. The Ohio Identification Cards were issued at the Scarbourgh Boulevard Deputy Registrar Office, Ohio Bureau of Motor Vehicles (BMV) in Columbus, Ohio. Once in possession of the Ohio identity cards, many of the Puerto Rican impersonators were able to obtain employment within the

6

Western District of Virginia.

In September of 2007, agents of the Department of Homeland Security's Immigration and Custom Enforcement in Harrisonburg, Virginia, within the Western District of Virginia, initiated undercover operations to identify a known illegal document vendor. On September 24, 2007, Defendant EDWIN MENDEZ sold a Puerto Rican birth certificate and Social Security card to a Confidential Informant (CI). The name on the Social Security Card matched the name on the birth certificate. MENDEZ charged $600 for the identity documents. MENDEZ informed the CI that he can make arrangements for the CI to be transported to Ohio to obtain an Ohio Identification Card from a BMV office. During the duration of the undercover operation, MENDEZ sold multiple Puerto Rican identity documents to the CI, some belonging to children as young as two years old.

On October 3, 2007, the CI and other Virginia impostors began traveling in an extended cab pick-up truck from Harrisonburg, Virginia to Columbus, Ohio. The pick-up truck was driven by Defendant JAIRO GOMEZ. The truck passengers were taken to the residence of Defendants RAMIREZ-GUTIERREZ and CHEATHAM. RAMIREZ-GUITERREZ provided information and instructions to the CI and the other truck passengers relative to their attempt to obtain an Ohio Identity Card.

On October 4, 2007, the CI and the other Virginia truck passengers were transported by Defendant RAMIREZ-GUTIERREZ to the Ohio to the BMV office at 2516 Scarborough Boulevard in Columbus, Ohio. Once at the location, Defendants NEKIA MACK-FULLER and MICHELE ECKERMAN processed the Virginia pick up truck passengers' application for an Ohio Identity Card using the truck passengers' Puerto Rican identity documents. The CI and the others who traveled with him secured Ohio Identity Cards using the identity documents provided by Defendant MENDEZ and following Defendant RAMIREZ-GUTIERREZ's instructions. Neither CI nor the other Virginia truck passengers were residents of or from Puerto Rico.

On October 23, 2007, CI met with Defendant GOMEZ in Harrisonburg, Virginia and discussed

obtaining a Puerto Rican birth certificate and matching Social Security card for $700. GOMEZ informed CI that he was able to obtain authentic United States birth certificates from Texas. GOMEZ made a telephone to Columbus, Ohio regarding Ohio identity cards. GOMEZ was unavailable to transfer the source documents to CI, but Defendant APARICIO provided the documents to CI November 19, 2007.

## FINDINGS OF FACT

Based on the evidence presented at the plea hearing, the undersigned now submits the following formal findings of fact, conclusions and recommendations:

1. The defendant is fully competent and capable of entering an informed plea;

2. The defendant is aware of the nature of the charges and the consequences of his plea;

3. The defendant knowingly and voluntarily entered a plea of guilty to Counts One and Two of the Indictment; and

4. The evidence presents an independent basis in fact containing each of the essential elements of the offenses to which the defendant is pleading guilty.

## RECOMMENDED DISPOSITION

Based upon the above findings of fact, the undersigned RECOMMENDS that the court accept the defendant's plea of guilty to Counts One and Two of the Indictment. The undersigned DIRECTS that a presentence report be prepared. A sentencing hearing hereby is scheduled for December 10, 2008 at 9:30 a.m. before the presiding District Judge in Harrisonburg.

## NOTICE TO PARTIES

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C): Within ten days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. The presiding District Judge shall make a *de novo* determination of those portions of the report or specified

proposed findings or recommendations to which objection is made. The presiding District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the undersigned. The judge may also receive further evidence or recommit the matter to the undersigned with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the presiding United States District Judge.

The Clerk is hereby directed to send certified copies of this Report and Recommendation to all counsel of record.

ENTERED: _____
United States Magistrate Judge

_Sept 9, 2008_
Date